UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KARA SINGLETON ADAMS, | |
| Movant, | CRIMINAL ACTION NO. 1:10-CR-0006-1-CAP |
| v. | CIVIL ACTION NO. 1:17-CV-0047-CAP |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

# **O R D E R**

This action is before the court on the magistrate judge's report and recommendation ("R&R") [Doc. No. 509]. The movant has filed objections thereto [Doc. Nos. 513 and 515].[1] Also pending are the movant's (1) motion to pull document [sic] and records for the court [Doc. No. 516]; (2) motion for release on bond pending a ruling on the § 2255 motion [Doc. No. 518]; and (3) emergency motion to amend and act on bond request [Doc. No. 520].

As an initial matter, the motions for release on bond [Doc. Nos. 518 and 520] are DISMISSED as moot because, as set forth below, the movant's

---

[1] Docket number 515 is an amendment to the movant's objections in which she corrected mistakes from her initial filing on a line by line basis.

§ 2255 motion is without merit. Also, the motion to pull documents [Doc. No. 516] is nothing more than a list of documents from the docket of this case and a reference to the movant's appeal and the Supreme Court's denial of her petition for writ of certiorari. To the extent that the movant is seeking a copy of these documents at no cost, there's been no showing of necessity for them. Accordingly, the motion [Doc. No. 516] is DENIED.

## I. Standard of Review

In reviewing a magistrate judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted). The district judge must "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990) (citation and internal quotation marks omitted). Absent objection, the district judge

"may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation," Fed. R. Civ. P. 72, advisory committee note, 1983 Addition, Subdivision (b).

## II. Discussion

### A. Background[2]

The movant and five co-defendants ran telemarketing businesses that represented themselves as third-party negotiators who could influence credit card companies to reduce customers' interest rates. In 2010, the movant was indicted by a federal grand jury for conspiracy to commit mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 (Count One), ten counts of wire fraud in violation of 18 U.S.C. §§ 1343, 2326, and 2 (Counts Two through Eleven), ten counts of structuring financial transactions to evade reporting requirements in violation of 31 U.S.C. §§ 5324(a)(1), 5324(a) and 31 C.F.R. Pt. 103 (Counts Twelve through Twenty-One), and conspiracy to commit

---

[2] In her objections, the movant raises three "clarifications" regarding the background information set forth by the magistrate judge. This court, while finding no deficiency in the procedural and factual summary set forth by the magistrate judge, has developed its own summation of the facts and procedural posture of this matter utilizing the record of the case. This summary is not intended to be an exhaustive recitation of the criminal action.

3

obstruction in violation of 18 U.S.C. §§ 371 and 1512(c)(2) (Count Twenty-Two) [Doc. No. 123]. Counts Six and Twelve were dismissed by the government with the movant's consent [Doc. Nos. 331, 351].

A trial was held from October 24, 2011, through November 7, 2011. The Eleventh Circuit Court of Appeals summarized the evidence as follows:

> In 2008 and 2009, Ms. Adams's various businesses initiated phone calls from Georgia to consumers across the country in which a live representative or a prerecorded message invited consumers to speak about lowering their credit card interest rates. [Though the business model remained the same, Ms. Adams and her associates cycled through many different corporate entities and business names. They switched entities whenever a business generated too many complaints or lost a merchant account due to excessive chargebacks.] Then, reading from a script, live representatives explained that, for a fee, the business would negotiate with credit card companies for rate reductions on its customers' behalf. The representatives claimed that Ms. Adams's businesses had special relationships with credit card companies and guaranteed the service would save customers at least $4,000 in their credit card payments over time. The representatives promised that if the guaranteed savings were not achieved, the customer would receive a refund of the cost of the program, which was typically between $749 and $1,495. Using this pitch, Ms. Adams's businesses attracted thousands of customers and generated revenue in the tens of millions of dollars. At trial, the government sought to prove the business model was a fraud. Customers testified that there appeared to be no special relationships between Ms. Adams's businesses and the credit card companies because, on three-way calls with the customer, Ms. Adams's representatives simply made requests for reductions that the credit card companies denied. Ms. Adams's employees testified that no such special relationships existed. Despite the emphasis that representatives placed on rate

4

reduction in sales calls, the primary service the businesses provided was a financial analysis that described how customers should structure their credit card payments to achieve the promised savings. Employees and customers testified that, at best, these analyses merely instructed customers to follow an aggressive payment plan, and, at worst, they also contained inaccurate calculations and overestimated savings.

Naturally, some unsatisfied customers asked for refunds. Employees testified that Ms. Adams instituted policies to protect her sales regardless of the merit of a customer's complaint: she set quotas for refunds, fought all chargebacks from credit card companies, [A chargeback is a process by which a credit card company challenges the validity of a transaction in which a business has charged a customer. The process requires the business to respond to the customer's complaint with a justification of the transaction, called a rebuttal.] and instructed employees to alter analyses if they did not reflect the guaranteed savings. Accordingly, customers testified that they failed to obtain refunds despite their persistent attempts. The government also introduced evidence of a Florida state civil investigation into similar business operations Ms. Adams ran in that state, to demonstrate both that she knew her practices were illegal and that she had a reason to flee to Georgia to begin her scheme anew.

*United States v. Adams*, 612 F. App'x 565, 567 (11th Cir. 2015).

The jury convicted the movant of one count of conspiracy to commit mail and wire fraud, nine counts of wire fraud, seven counts of structuring financial transactions, and one count of conspiracy to commit obstruction of justice [Doc. No. 358]. This court sentenced the movant to 210 months' imprisonment plus three years' supervised release [Doc. No. 386].

5

After the movant filed a timely notice of appeal, the Eleventh Circuit affirmed her convictions and sentences by order dated June 11, 2015. *Adams*, 612 F. App'x at 572. The Eleventh Circuit considered and rejected the movant's arguments that (1) this court improperly denied her final motion for continuance of trial; (2) this court improperly admitted evidence of a Florida civil investigation and settlement negotiations arising out of similar conduct not included in the indictment; (3) this court improperly admitted hearsay evidence; and (4) the 210-month sentence was substantively unreasonable.

The movant filed a petition for certiorari with the Supreme Court. That petition was denied on January 11, 2016. *Adams v. United States*, 136 S. Ct. 868 (2016).

**B. Section 2255 Motion**

The movant now collaterally challenges her convictions and sentences. In her motion, she asserts the following seven grounds for relief: Ineffective assistance of counsel (1) before trial, claims 1-8; (2) during trial, for failing to prepare for trial or advise the movant on important decisions and claims 6-8, 10; (3) during sentencing, claims 1, 4, 8-9; (4) on ancillary matters, claims 1, 3, 5, 8; (5) on appeal, for failing to raise meaningful arguments or support the

accused with available rules and evidence and claims 8, 9; and (6) during the adversarial process generally, claims 1-5, 7-8; (7) prosecutorial misconduct, claim 11, which was not raised on appeal because of ineffective assistance of counsel; (8) trial court error, claim 12, which was not raised on appeal because of ineffective assistance of counsel; and (9) the movant is entitled to a defense based on a change in the meaning of scheme or artifice to defraud, claim 14. In her memorandum in support of her motion to vacate, the movant raises the following fourteen claims:

> 1. Counsels provided constitutionally deficient representation by failing to adequately research and analyze the law as it applied to the facts of this specific case.
>
> 2. Counsels provided constitutionally deficient representation by failing to adequately communicate the indictment, the nature of the charges, the laws, the statutes and/or the regulations as each related to the accused, her businesses and/or her business relationships and/or the affects of other agencies['] allegations.
>
> 3. Counsels provided constitutionally deficient representation by failing to review the discovery with the accused and how the government's evidence applied to each of the elements of the government's allegations.
>
> 4. Counsels provided constitutionally deficient representation by failing to adequately investigate and/or adequately present mitigating evidence.
>
> 5. Counsels provided constitutionally deficient representation by failing to seek authorization from the court to represent the

accused in other inextricably intertwined ancillary matters that did affect the criminal proceedings.

6. Counsels provided constitutionally deficient representation by failing to raise meaningful and/or timely arguments and/or failing to file various proper motions.

7. Counsels provided constitutionally deficient representation by affirmatively misleading the accused about the government's case, potential witnesses, various meetings and made disparaging remarks about the federal agents and the judge.

8. Counsels provided constitutionally deficient representation by demonstrating a lack of familiarity and/or experience specific to the accused's case to subject the government's case to meaningful adversarial testing.

9. Counsels provided constitutionally deficient representation . . . because they were unable to be honest and/or objective about their performance before trial, during trial and/or in the post conviction proceedings.

10. Counsels provided constitutionally deficient representation when they failed to adequately communicate with the accused the defense options and/or present to the jury all affirmative defenses.

11. The accused was denied her constitutional rights by governmental misconduct and pretrial tactics which rendered the trial fundamentally unfair.

12. The district court abused its discretion producing multiple errors which rendered the trial of the accused unfair.

13. The petitioner incorporates claims 1-12, but for all of the counsels' unprofessional errors, the results of the proceedings would have been different and the accused would not have been

found guilty. In fact, [Movant] would be home with her family. [Movant] has witnesses to call in a hearing on the issues.

14. Although case law was not applicable at the time of [Movant's] trial, p[e]rsuasive new case law defining the meaning of "scheme or artifice to defraud" in the mail and wire fraud statutes and new case law in the jury's instructions would be applicable to [Movant's] defense.[3]

After setting forth the applicable standard of review,[4] the magistrate judge first found that the movant's ineffective assistance of counsel claims to be insufficient to state a constitutional claim for habeas corpus relief because they are vague and conclusory. Next, as to the prosecutorial misconduct and trial court error claims, the magistrate judge found them to be procedurally defaulted and barred from review. Finally, with regard to the *Takhalov* case, the magistrate judge found the plaintiff's mere citation of the case without a showing of how or why application of it would have changed the result in her case to be insufficient.[5]

---

[3] The case cited by the movant is *United States v. Takhalov*, 827 F.3d 1307 (11th Cir.), *opinion modified on denial of reh'g*, 838 F.3d 1168 (11th Cir. 2016).
[4] The movant objected to the standard of review contained in the R&R. However, the case law cited by the magistrate is accurate and applicable.
[5] Because *Takhalov* involved instructions to the jury, the magistrate judge pointed out that any claim the movant had with respect to jury instructions is procedurally defaulted because it was not raised on appeal.

9

### 1. Ineffective Assistance of Counsel Claims

Under the Sixth Amendment, a defendant has the right to "reasonably effective" legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show constitutionally ineffective assistance of counsel, a petitioner must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him. *Id.* at 690-92; *Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir. 2000) (stating that the court may resolve an ineffective assistance claim based on either prong).

Under the first prong, a movant must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. "[C]ounsel's conduct is presumed reasonable, [and] a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). To prove ineffectiveness, a movant must show that his attorney's representation "fell outside the wide range of professionally competent assistance." *Id.* at 1314 (internal quotation marks omitted). When evaluating an attorney's performance, the court must be highly deferential and "avoid second-guessing counsel's performance." *Id.*

Moreover, when reviewing counsel's performance, the court "must evaluate the reasonableness of counsel's performance from counsel's perspective at the time," not with the distortion of hindsight. *Id.* at 1316.

Under the second *Strickland* prong, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The magistrate judge reviewed the movant's ineffective assistance of counsel claims and found that all were deficient because they were merely conclusory. As authority for this decision, the magistrate judge cited *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (recognizing that "[c]onclusory allegations of ineffective assistance are insufficient" (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)) (internal quotation marks omitted)); *Oliver v. Wainwright*, 795 F.2d 1524, 1531 (11th Cir. 1986) (stating that "vague assertions [of ineffective assistance of counsel] fail to state any constitutional claim and do not warrant further consideration"); *Edwards v. Sec'y Dep't of Corr.*, No. 8:08-CV-1145- T-24MAP,

2008 WL 786331, at *9 n.8 (M.D. Fla. Mar. 21, 2008) (stating that "[v]ague and conclusory claims failing to state facts which would show an entitlement to relief can be dismissed without further effort by the Court"). The magistrate judge pointed out that while the movant complains that her attorneys failed to investigate, research, communicate, review various matters, present evidence, present arguments, and/or file motions, the movant does not identify specific actions her attorneys should have taken, does not demonstrate what different action by counsel would have produced or changed, and does not establish that that any potential change in action by her attorneys would have created a reasonable probability of a favorable outcome in her case.

In her objections, the movant argues that she prepared her § 2255 motion to vacate without representation and while confined. She complains that without representation, it is impossible for her to substantiate her claims. She again fails to set forth any specific conduct or omissions by her attorneys. Rather, she speaks in generalities to complain that her attorneys did such a poor job it was as if she had no counsel at all.[6] The undersigned

---

[6] For example, the movant contends that her attorneys came to court with no defense when one was available and that counsel forwent meritorious claims. Objections at 9 [Doc. No. 513]. But the movant does not explain what defense strategy her attorneys should have used but did not or what "meritorious

12

presided over the trial of this action as well as adjudicated motions filed by the movant's attorneys. Her very general conclusion that her attorneys did not do a good job is simply not supported by the record. More importantly, even though the movant now claims that she provided the magistrate judge with a "slew of facts" in her motion to vacate and memorandum in support,[7] this court can find not one example of an action or inaction identified by the movant that demonstrates deficient attorney conduct tied to any showing that, but for the action or inaction complained about, her proceedings would have come out differently.[8]

---

claims" her lawyers failed to raise. Additionally, the movant asserts that her lawyers "lacked the civil experience" to meet the government's case. Apparently, the movant believes that her appointed counsel in the criminal action had an obligation to assist her with a civil suit against her filed by the Federal Trade Commission. The movant cites no authority for this proposition, and the court is aware of none.

[7] The movant contends that she also provided facts in a reply brief. However, the court has never received a reply brief from the movant. The only filing by the movant during the timeframe in which she claims to have filed a reply brief (May 2017) is her motion for discovery [Doc. No. 508], which has been denied [Doc. No. 509].

[8] The court recognizes that in her objections, the movant presents a laundry list of alleged wrongdoing by her attorneys. Objections at 23 – 25 [Doc. No. 513]. However, there is nothing in these barebones allegations to overcome the strong presumption that counsel's performance was reasonable. *See Atkins v. Singletary*, 965 F.2d 952, 958 (11th Cir. 1992). Viewing these allegations with the high deference required by *Strickland*, this court cannot conclude that any of the alleged deficiencies of counsel fell outside the wide range of professionally competent assistance. 466 U.S. 668, 689-90. And as set forth above, the movant has failed to tie any of these alleged deficiencies

13

As set forth above, the movant attributes her inability to even allege facts supporting her sweeping ineffective assistance of counsel claims to being unrepresented in this proceeding. However, it is well-settled that "prisoners do not have a constitutional right to counsel when mounting collateral attacks to their convictions or sentences." *Moore v. Zant*, 885 F.2d 1497, 1507 (11th Cir. 1989) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)); *see also Barbour v. Haley*, 471 F.3d 1222, 1227 (11th Cir. 2006) (noting the Eleventh Circuit "has consistently held that there is no federal constitutional right to counsel in postconviction proceedings"). Therefore, the absence of counsel to assist in preparing the instant § 2255 motion to vacate does not relieve the movant of the requirement to establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced her. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As set forth by the magistrate judge, the movant did not carry this burden in her § 2255 motion and memorandum as to any claim for ineffective assistance of counsel.[9]

---

to prejudice beyond her own conclusory statements that the outcome of her trial would have been different. Given the overwhelming evidence of the movant's guilt presented at trial, her conclusory statements regarding prejudice are insufficient.

[9] This conclusion applies to the movant's cumulative claim as well.

14

### 2. Procedurally Defaulted Claims

The movant raised prosecutorial misconduct claims, which the magistrate judge found to be procedurally defaulted because the claims were not raised on direct appeal. Likewise, the movant's claims of unspecified "court error" were found by the magistrate judge to be procedurally defaulted for the same reason.

A § 2255 motion may not be used as a surrogate for appellate review. *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004); *see Stone v. Powell*, 428 U.S. 465, 478 n.10 (1976) (28 U.S.C. § 2255 will not be allowed to do service for an appeal). "Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011). The movant's prosecutorial misconduct claims were not raised in the movant's direct appeal. Therefore, the magistrate judge's conclusion that these claims have been procedurally defaulted is correct.

In her objections, the movant fails to demonstrate why the magistrate judge's findings with respect to cause and prejudice were incorrect.[10] Instead

---

[10] The movant does object to the magistrate judge's conclusion that she has failed to show cause and prejudice to excuse the procedural defaults.

15

she spends pages listing her allegations of misconduct by the government. Objections at 25 – 39 [Doc. No. 513]. But she is barred from raising these procedurally defaulted claims.

With respect to the claims of court error, which were found to be procedurally defaulted, the movant files no objection. Moreover, she has made no showing of cause and prejudice to overcome the default.

Finally, as to the movant's claim regarding jury instructions,[11] the plaintiff's failure to raise it on appeal resulted in procedural default. The movant has made no showing of cause and prejudice sufficient to excuse the default.

### 3. Certificate of Appealability ("COA")

Section 2253 sets forth the standard a movant must satisfy to obtain appellate review of this court's disposition of her § 2255 motion to vacate:

---

Objections at 43 [Doc. No. 513]. She then states that her reply was not docketed in this case. Presumably, the movant is contending that her reply brief contained a sufficient showing of cause and prejudice. However, she fails to even describe to this court what she raised in support of her cause and prejudice argument.

[11] The movant does not specify her claim as one regarding jury instructions, but she cites *United States v. Takhalov*, 827 F.3d 1307 (11th Cir.), *opinion modified on denial of reh'g*, 838 F.3d 1168 (11th Cir. 2016). In that case, the Eleventh Circuit held that a district court abused its discretion in failing to give a particular jury instruction.

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from -
>
> (A) the final order in a habeas corpus proceeding which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c)(1-3). This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v . McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations omitted). The magistrate judge found that it is not reasonably debatable that the movant's claims lack merit and that she has not shown that she was denied a constitutional right.

In her objections, the movant "objects that 'conceivable effect, 'reasonable probability' and 'jurists would find it debatable' are all in the same category of the fact that if given the benefit of doubt at trial or on de

17

novo review a defendant under law cannot be found guilty under the definition of reasonable doubt and is sufficient to undermine the facts at trial." Objection at 43 [Doc. No. 513]. This sentence is nonsensical and offers nothing to call into question the magistrate judge's recommendation on the COA. Moreover, as set forth above, the movant's claims are wholly without merit. Accordingly, the movant is denied a COA. The movant may request a circuit judge to issue a COA since this court has denied the same. Fed. R. App. P. 22 (b)(1, 2). "Under the plain language of the rule, an applicant for the writ gets two bites at the appeal certificate apple: one before the district judge, and if that one is unsuccessful, he gets a second one before a circuit judge." *Jones v. United States*, 224 F.3d 1251, 1255 (11th Cir. 2000) (quoting *Hunter v. United States*, 101 F.3d 1565, 1575 (11th Cir. 1996)).

### III. Conclusion

Based on the foregoing, the movant's objections [Doc. No. 513] as amended [Doc. No. 515] are OVERRULED, and the magistrate judge's R&R [Doc. 509] is ADOPTED as the order of the court.

IT IS ORDERED that the motion to vacate [Doc. 500] is DENIED, and that a COA is DENIED. IT IS FURTHER ORDERED that the magistrate judge's denial of the motion for discovery [Doc. No. 508] is AFFIRMED.

IT IS FURTHER ORDERED that the movant's motion to pull document [sic] and records for the court [Doc. No. 516] is DENIED and the motion for release on bond pending a ruling on the § 2255 motion [Doc. No. 518] and emergency motion to amend and act on bond request [Doc. No. 520] are DISMISSED AS MOOT.

The clerk is DIRECTED to close the civil action associated with the filing of the motion to vacate.

SO ORDERED, this 12th day of December, 2018.

/s/CHARLES A. PANNELL, JR.
CHARLES A. PANNELL, JR.
United States District Judge